HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DONALD W. MORGAN and MORGAN INSURANCE LLC,<br><br>　　　　　　　Plaintiffs,<br><br>　vs.<br><br>CAPITOL INDEMNITY CORPORATION, CAPITOL SPECIALTY INSURANCE CORPORATION, and PLATTE RIVER INSURANCE COMPANY,<br><br>　　　　　　　Defendants. | NO. 2:17-CV-00754-JCC<br><br>REPLY IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE TO WISCONSIN |

In an attempt to avoid scrutiny of their failing arguments, Plaintiffs make various factual assertions going to the merits of their underlying claims in opposition to Defendants' motion to transfer. The majority of those assertions are unsupported by the available evidence and are wholly irrelevant to the narrow issues before this Court—whether the forum selection clause applies to Plaintiffs' claims and whether the clause is otherwise enforceable—and examination of those issues reveals that transfer to Wisconsin is appropriate in this case.

Plaintiffs argue that the forum selection clause should not apply by attempting to distance themselves from the Agreement. But because Plaintiffs squarely assert breach of the Agreement as their first cause of action and because the remaining claims require interpretation of the

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE TO WISCONSIN (2:17-CV-00754-JCC) - 1 -

Betts Patterson Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1203475_2.docx/120817 1144/2487-0006


Agreement, those claims clearly fall within the forum selection clause's broad scope. Plaintiffs cannot seek relief under the Agreement and at the same time avoid application of the forum selection clause in that same Agreement. To this end, Plaintiffs' assertion that it is *Defendants* that seek to "have it both ways" is not well taken.

Plaintiffs have also failed to meet their burden of proving that the forum selection clause is unenforceable based on the five "public interest" factors set forth by the Ninth Circuit. Addressing only one of the five factors, Plaintiffs assert that Washington has an interest in the litigation because it relates generally to insurance. But Plaintiffs are insurance producers, not insureds, and there is no support for Plaintiffs' assertion that Washington's public policy protections extend beyond insureds or otherwise constitute such a significant public interest as to override a valid forum selection clause in the absence of other extraordinary factors. Accordingly, the Court should transfer this case to the Western District of Wisconsin under 28 U.S.C. § 1404(a).

**A.   Correction of Factual Record**

Plaintiffs attempt to divert the Court's attention from the narrow issue before it—whether this matter should be transferred to Wisconsin pursuant to the Agreement's forum selection clause—by attempting to argue the merits of this case in their opposition brief. In so doing, Plaintiffs not only fail to address the relevant legal analysis, but also misrepresent some of the critical facts in this case. Although these facts are irrelevant to the venue transfer issue, Defendants are compelled, in light of Plaintiffs' misrepresentations, to briefly correct the record here.

First, Defendants have not been able to locate any notice from Plaintiffs that "Donald Morgan's brokerage business transitioned to Morgan Insurance, LLC" in 2012, as Plaintiffs claim. (Dkt. 28 at 2; Broadbent Decl., ¶ 6.) Indeed, the available documentation indicates that Defendants did *not* receive such notice, as their accounting records and correspondence with

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO TRANSFER VENUE TO      - 2 -
WISCONSIN (2:17-CV-00754-JCC)

1203475_2.docx/120817 1144/2487-0006

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

Morgan, including the letter terminating the Agreement, were addressed to Morgan of "Morgan & Associates, Inc." (Broadbent Decl., ¶ 5 and Ex. 2.) Further, Defendants would have had no reason to believe that any new entity existed in the absence of receiving notice, particularly where, to date, Morgan's email footer still reads: "President/Broker," "Morgan & Associates, Inc." (Johnson Decl., Ex. 1.) Defendants therefore dispute that Plaintiffs provided any notice of an entity "transition," and the Court should disregard any purported factual allegations made by Plaintiffs on that topic. (*See, e.g.*, Dkt. 28 at 5 ("Capitol, with the knowledge that it was doing business with a new entity, continued accepting premiums from policyholders generated by that new entity without a new agreement.").)

Second, Plaintiffs assert that Defendants improperly engaged in "direct billing" of insureds, claiming that Defendants had "previously agreed" to allow Plaintiffs to "agent bill" certain accounts. (*See* Dkt. 28 at 3). Because the Agreement itself allows for both types of billing (*see* Dkt. 27 at 26), it appears that Plaintiffs may be referring to some other purported agreement between the parties. Although Plaintiffs have failed to state their position on direct billing with sufficient specificity for Defendants to fully address it, it is Defendants' position that they fully complied with the Agreement as it relates to billing requirements.

Third, Plaintiffs assert that the allegedly improper direct billing caused their relationships with insureds to deteriorate. (*See* Dkt. 28 at 3). But even if the allegedly improper direct billing occurred, it was not the cause of any harm to Plaintiffs' client relationships. Rather, any harm was the result of Plaintiffs' own misconduct, which ultimately resulted in the revocation of Plaintiffs' insurance producer licenses by the Insurance Commissioner, by order effective July 20, 2015. (Broadbent Decl., Ex. 1.) In the order revoking Plaintiffs' licenses, the Insurance Commissioner found that Plaintiffs: (1) attempted to bind coverage for at least four business accounts that it had no authority to bind and "sent Certificates of Insurance to those four clients when such coverage did not exist"; (2) "accepted premium[s] from four clients and failed to

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO TRANSFER VENUE TO   - 3 -
WISCONSIN (2:17-CV-00754-JCC)

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1203475_2.docx/120817 1144/2487-0006

timely remit such funds to the person entitled thereto"; (3) "forged the signature of one of the clients on an insurance application"; and (4) refused to repay a $19,064.00 overpayment made by an insured. (*Id*., ¶¶ 2-4.) In light of their wrongful conduct resulting in revocation of their insurance licenses, Plaintiffs cannot say that it was Defendants' direct billing of clients that caused any policyholder relationships to deteriorate.

Fourth, Plaintiffs state that Defendants terminated the Agreement because Plaintiffs complained about Defendants' billing practices. (*See* Dkt. 28 at 3.) This statement is simply incorrect. The Agreement was "terminated due to premium payment timelines and agency profitability," among other reasons. (Broadbent Decl., Ex. 2.)

Fifth, Plaintiffs' assertion that they are owed commissions by Defendants is also incorrect. (*See* Dkt. 28 at 2, 4.) After Morgan & Associates' termination, Defendants' final accounting revealed that when commissions owed to Morgan & Associates were offset against premiums owed by Morgan & Associates, Morgan & Associates has an outstanding balance of $11,785.84 due to Defendants. (Broadbent Decl., ¶ 7.) That balance is owed to date, notwithstanding Defendants' requests for payment. (*Id*.)

Finally, Plaintiffs inaccurately represent the content and effect of Capitol Indemnity Corporation's consent order with the Insurance Commissioner. Plaintiffs assert that Defendants improperly cancelled 64 policies upon termination of the Agreement, in violation of RCW 48.17.591, and that the termination notices sent to Plaintiffs' clients "befouled" their relationships and "destroyed" Plaintiffs' reputation. (Dkt. 28 at 2-3.) But as set forth above, Plaintiffs' own conduct is responsible for any damage to their relationships with insureds and/or their reputation.

The statute at issue prohibits an insurer from canceling or refusing to renew any policy because an insured's producer was terminated by the insurer. RCW 48.17.591(1). However, the statute does not entitle the terminated producer to continue to renew client policies with the

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO TRANSFER VENUE TO        - 4 -
WISCONSIN (2:17-CV-00754-JCC)

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1203475_2.docx/120817 1144/2487-0006

insurer indefinitely.  Rather, the insurer is required to renew any policies for a period of one year, during which time the producer "shall have a reasonable opportunity to transfer affected policies to other insurers with which the insurance producer has an appointment."  RCW 48.17.591(2)(b).  If the producer does not place the policies with another insurer within one year after termination, the insurer is authorized to assign the policy to a different producer.  *Id*.

Here, according to the Insurance Commissioner: "The Company *correctly* renewed the producer's 120 clients' policies for a year following the termination as required by RCW 48.17.591(2)(a)."  (Dkt. 29-1, ¶ 2 (emphasis added).)  It was only after that one-year period that, due to a clerical error, Defendants failed to renew 64 policies.  (*Id*., ¶ 4.)  During that second year, Defendants would have been entitled to assign the accounts to another broker, other than Morgan, because Morgan had not transferred them to another insurer.  *See* RCW 48.17.591(2)(b).  As such, the statutory violation made the subject of the consent order cannot have been the cause of any injury to Morgan.

**B.      Forum Selection Clause Applies to all of Plaintiffs' Claims**

Plaintiffs' primary argument against transfer is that the scope of the forum selection clause does not apply to all of their claims, as only one of their six causes of action is for breach of the Agreement.  (Dkt. 28 at 4-6.)  But as set forth in Defendants' motion, the remaining five causes of action in the complaint are clearly linked to the Agreement.  In their second cause of action for breach of contract implied in fact, Plaintiffs allege that "Morgan Insurance, LLC expected to be paid commissions *consistent with the terms of the August 2011 contract*."  (Doc. 18, ¶ 5.3 (emphasis added).)  The remaining causes of action arise out of the brokerage relationship between Morgan & Associates and Defendants, which was premised on the Agreement.  Any obligations allegedly owing by Defendants in this case arise out of the Agreement alone, without which no producer relationship would exist.  As such, resolution of these claims relates to the interpretation and enforcement of the Agreement, rendering the broad

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO TRANSFER VENUE TO         - 5 -
WISCONSIN (2:17-CV-00754-JCC)

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1   forum selection clause applicable to Plaintiffs' claims.  *See Manetti-Farrow, Inc. v. Gucci Am.,*

2   *Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (test for scope of forum selection clause is whether

3   "resolution of the claims relates to interpretation of the contract").

4         Plaintiffs nevertheless assert that because some of their claims "can exist independently"

5   of the Agreement based on a "course of performance" between the parties, the forum selection

6   clause should not apply.  (Dkt. 28 at 4-6.)  But whether certain claims "*can*" exist independently

7   of the Agreement is not the test for determining the scope of a forum selection clause.  Rather, as

8   stated above and in Defendants' motion, it is whether the ancillary claims relate to the

9   interpretation of the Agreement.  *See Manetti-Farrow*, 858 F.2d at 514.

10        Not only do Plaintiffs fail to apply the correct legal analysis to the scope of the forum

11  selection clause, but their assertion that any of their claims are wholly distinct from the

12  Agreement is inconsistent with their complaint.  Plaintiffs have not identified any "course of

13  performance" that stands apart from the terms of the written Agreement.

14        Similarly, any "agency" relationship arose exclusively out of the Agreement itself, not

15  some independent relationship between Plaintiffs and Defendants.  The relationship between

16  Plaintiffs and Defendants, to the extent that any existed, would have arisen on the basis of

17  Plaintiffs' misrepresentation to Defendants regarding the continued existence of Morgan &

18  Associates, the entity with whom they contracted.  For this reason, Plaintiffs' argument that they

19  had an "implied" agency agreement with Defendants is similarly misplaced, as any relationship

20  between Plaintiffs and Defendants was the result of Plaintiffs' deception.  Again, the only

21  agreement to which Defendants knowingly submitted in this case was the Agreement between

22  Defendants and Morgan & Associates.

23        The case upon which Plaintiffs rely in support of their claim that they are not bound by

24  the forum selection clause, *Evanston Ins. Co. v. Certain Underwriters at Lloyd's*, C16-0755JLR,

25  2016 WL 7851473, at *4 (W.D. Wash. Oct. 31, 2016), is inapplicable here.  In that case, the

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO TRANSFER VENUE TO      - 6 -
WISCONSIN (2:17-CV-00754-JCC)

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1203475_2.docx/120817 1144/2487-0006

court declined to enforce a forum selection clause contained in Lloyd's contracts with its insureds against Evanston, an insurance company seeking indemnification from Lloyd's for payments Evanston made to Lloyd's insureds.  *Id*.  The court reasoned that Evanston's claim did not require interpretation of the insurance policies containing the forum selection clauses because the claim was based on Lloyd's acknowledged duty to defend the insureds.  *Id*.

By contrast, here, Plaintiffs directly seek to enforce the Agreement containing the forum selection clause, rendering interpretation of that Agreement essential to the disposition of their case.  Although Plaintiffs state that some of their claims "*can* exist independently" of the Agreement (which is inaccurate, as set forth above), Plaintiffs admit that at least one of their claims is a *direct* claim for enforcement of the Agreement.  (*See* Dkt. 28 at 6 ("Morgan Insurance, LLC is, indeed, arguing that it has the right to enforce rights under that Agreement.").)  As such, the forum selection clause necessarily applies.  Unless Plaintiffs are willing to dismiss their claim for breach of the Agreement and the claims requiring interpretation of that Agreement, they must be bound by the forum selection clause in the Agreement they seek to enforce.

C.   **Defendants Are Entitled to an Unconditional Transfer**

Plaintiffs argue that Defendants' ability to enforce the forum selection clause should be limited by either: (1) requiring Defendants to litigate the enforceability of the Agreement in Washington before transferring to Wisconsin; or (2) stipulating that the Agreement is enforceable before transferring to Wisconsin.  (Dkt. 28 at 6-7.)  In making these demands, Plaintiffs seek to either prematurely determine the merits of this case in the forum of their choosing, contrary to the forum selection clause in the Agreement they seek to enforce, or coerce Defendants into conceding a critical issue going to the merits of this case before allowing them to enforce a presumptively valid forum selection clause.  Neither of these results is appropriate.

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO TRANSFER VENUE TO      - 7 -
WISCONSIN (2:17-CV-00754-JCC)

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1203475_2.docx/120817 1144/2487-0006

The United States District Court for the District of Minnesota considered and rejected Plaintiffs' exact arguments on this point in *Ferguson-Keller Associates, Inc. v. Plano Molding Co.*, LLC, CV 17-1713 (RHK/TNL), 2017 WL 3578703, at *3 (D. Minn. Aug. 8, 2017), in which the plaintiff argued that the forum selection clause contained in an expired agreement became part of any subsequent agreement by the parties, asserting that the terms of the alleged unwritten contract needed to be litigated before the case was transferred. The Court rejected this argument, reasoning:

> [A]ccepting this logic would defeat the very purpose of a forum-selection clause and turn contract law on its head. If a plaintiff (such as Ferguson-Keller here) were to challenge the existence or terms of a contract, the case would first have to be decided on the merits (determining whether a valid contract existed) and only then could the forum-selection clause be applied—that is, once the case was effectively over. This would be a strange way to run a railroad. *See, e.g., Texas Source Grp., Inc. v. CCH, Inc.*, 967 F. Supp. 234, 237 (S.D. Tex. 1997) (noting that under the logic espoused by Ferguson–Keller, "a party could defeat a validly negotiated forum-selection clause by simply alleging that the nonmoving party breached the contract").

*Id.*; *see also Global Seafood Inc. v. Bantry Bay Mussels Ltd.,* 659 F.3d 221, 224 n. 2 (2d Cir. 2011) (noting that "it makes sense to address first the forum selection clause in order to determine the appropriate venue for hearing the parties' dispute about the scope and effect of the [underlying contract]"); *Rosehoff Ltd. v. Cataclean Americas LLC*, 12-CV-1143A, 2013 WL 2389725, at *5 (W.D.N.Y. May 30, 2013) ("Addressing forum selection first also promotes judicial economy in that it avoids a scenario in which one court spends time and energy analyzing issues only to find out later that another court should have addressed those issues.").

Because the claims in this lawsuit clearly fall within the scope of the forum selection clause, the case should be transferred to Wisconsin, at which time the Wisconsin court can adjudicate the merits of the case, including the enforceability of the Agreement. If Plaintiffs wish to avoid application of the forum selection clause, then it is they, "the part[ies] acting in violation of the forum-selection clause, . . . [who] bear the burden of showing that public-interest

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE TO WISCONSIN (2:17-CV-00754-JCC)   - 8 -

Betts
Patterson
Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1203475_2.docx/120817 1144/2487-0006

factors overwhelmingly disfavor a transfer." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 583 (2013).

### D. Public Interest Factors Do Not Favor Washington

Of the five public interest guideposts that courts in the Ninth Circuit consider when ruling on the enforceability of a forum selection clause, Plaintiffs appear to concede that, at most, only one weighs in their favor: the local interest in the lawsuit. (*See* Dkt. 28 at 8.) In support of their "local interest" argument, Plaintiffs rely on Washington's insurance statutes and make the sweeping declaration that "all matters relating to insurance affect the public interest of this state." (*Id.*) Plaintiffs would thus have forum selection clauses rendered unenforceable in *any* contract relating to insurance, regardless of whether it affects policyholders.

But Washington's interest is not in protecting *anyone* involved in the insurance industry; rather, it is the protection of insureds. The Washington Supreme Court has articulated this distinction in the context of the Consumer Protection Act (CPA), recognizing that only an insured can bring a "per se" CPA claim against an insurer, under which public interest impact is presumed by virtue of a violation of any of the statutes in Title 48 RCW. *See Transamerica Title Ins. Co. v. Johnson*, 103 Wn.2d 409, 418, 693 P.2d 697 (1985). By contrast, "a noninsured must rely on the public interest test for a violation of the CPA," which requires some showing, other than a mere statutory violation, that the defendant's conduct violates the public interest. *Id*.

Plaintiffs do assert that insureds' interests were affected by the cancellation of certain policies as set forth in the consent order. But Plaintiffs do not represent these insureds and do not bring this action on their behalf. As discussed above, Defendants' conduct made the subject of that order cannot have affected any of Plaintiffs' relationships with insureds because Plaintiffs were not entitled to the insureds' business at the time the policies were cancelled. As such, standing to remedy any alleged wrong arising out of the policy cancellations would lie with the insureds themselves, not Plaintiffs.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE TO WISCONSIN (2:17-CV-00754-JCC)   - 9 -

Betts Patterson Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1203475_2.docx/120817 1144/2487-0006

The only other asserted "public interest" identified by Plaintiffs is Plaintiffs' own interest in its reputation with policyholders, which Plaintiffs allege was "unfairly tarnished" by Defendants' actions. (Dkt. 28 at 9.) But as set forth above, that assertion is false. Further, even if Defendants had harmed Plaintiffs' reputation in the insurance industry, that matter is a private dispute that does not affect policyholders or the public interest.

Plaintiffs also argue that RCW 48.18.200, which prohibits insurers from including non-Washington forum selection clauses in their insurance contracts, applies to the Agreement. (Dkt. 28 at 9.) But the statute cited by Plaintiffs clearly relates to insurance policies with insureds, not producer agreements like the one here. The chapter containing the statute at issue is titled "Insurance Contracts," and the provisions therein relate exclusively to the contract between insured and insurer. *See generally*, chapter 48.18 RCW. There is simply no support for Plaintiffs' assertion that the statute applies to the producer agreement at issue in this case.

Likely aware of this fact, Plaintiffs argue, in the alternative, that RCW 48.18.200 reflects Washington's policy to protect its residents in disputes with insurance companies. (Dkt. 28 at 9-10.) But again, unlike an insured, Plaintiffs and/or Morgan & Associates, do not face the disparity in bargaining power inherent in the insurer-insured relationship relating to insurance policies. Rather, any agreement with Plaintiffs and/or Morgan & Associates was an arm's length agreement between sophisticated businesses, for which no heightened public policy interest or statutory protection applies.

In light of the foregoing, Plaintiffs have identified no legitimate Washington interest in this dispute. Plaintiffs have also failed to even assert, let alone prove, that any of the other public interest factors ((2) the court's familiarity with the governing law; (3) the burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to a particular forum) apply. *See Boston Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009). Accordingly, Plaintiffs have failed to meet their burden of proving that

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE TO WISCONSIN (2:17-CV-00754-JCC) - 10 -

Betts Patterson Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1203475_2.docx/120817 1144/2487-0006

1  "extraordinary" or "unusual" circumstances exist in this case that would justify setting the forum

2  selection clause aside.  *See Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*,

3  134 S. Ct. 568, 575, 582 (2013).

**E.   Conclusion**

Although Plaintiffs attempt to distance themselves and their claims from the Agreement in order to avoid the scope of the forum selection clause, the fact that they admittedly seek relief under that Agreement is dispositive as to the applicability of the forum selection clause here.  In the face of an applicable forum selection clause, Plaintiffs have failed to meet their burden of showing that some extraordinary circumstances favor adjudication of this matter in Washington. Accordingly, the Court should enforce the forum selection clause and transfer this matter to the United States District Court for the Western District of Wisconsin.

DATED this 8th day of December, 2017.

BETTS, PATTERSON & MINES, P.S.

By */s James D. Nelson*
By */s Shaina R. Johnson*
By */s Natalie A. Moore*
    James D. Nelson, WSBA #11134
    Shaina R. Johnson, WSBA #46079
    Natalie A. Moore, WSBA #45333
Betts, Patterson & Mines, P.S.
One Convention Place, Suite 1400
701 Pike Street
Seattle WA  98101-3927
Telephone:    (206) 292-9988
Facsimile:    (206) 343-7053
E-mail:       jnelson@bpmlaw.com
E-mail:       sjohnson@bpmlaw.com
E-mail:       nmoore@bpmlaw.com
Attorneys for Defendants

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE TO WISCONSIN (2:17-CV-00754-JCC)  - 11 -

Betts Patterson Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1203475_2.docx/120817 1144/2487-0006

## CERTIFICATE OF SERVICE

I, Natalie A. Moore, hereby certify that on December 8, 2017, I electronically filed the following:

- **Reply in Support of Defendants' Motion to Transfer Venue to Wisconsin; and**

- **Certificate of Service.**

with the Court using the CM/ECF system which will send notification of such filing to the following:

*Counsel for Plaintiffs*
Brent W. Beecher
Hackett, Beecher & Hart
1601 Fifth Avenue, Suite 2200
Seattle, WA  98101

DATED this 8th day of December 2017.

BETTS, PATTERSON & MINES P.S.

By  /s Natalie A. Moore
By  /s
By  /s
   James D. Nelson, WSBA #11134
   Shaina R. Johnson, WSBA #46079
   Natalie A. Moore, WSBA #45333
Betts, Patterson & Mines, P.S.
One Convention Place, Suite 1400
701 Pike Street
Seattle WA  98101-3927
Telephone:  (206) 292-9988
Facsimile:   (206) 343-7053
E-mail:       nmoore@bpmlaw.com
E-mail:
E-mail:
Attorneys for Defendants

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE TO WISCONSIN (2:17-CV-00754-JCC)  - 12 -

Betts Patterson Mines
**One Convention Place**
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1203475_2.docx/120817 1144/2487-0006